J-A05040-16

2016 PA Super 85

| CONESTOGA BANK, S/B/M/ FIRST PENN BANK, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TIOGA INVESTMENTS II, LLC AND YIP-YAN WONG, | |
| Appellants | No. 1271 EDA 2015 |

Appeal from the Order Entered April 17, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): March Term, 2013-No. 000381

BEFORE: OLSON, J., OTT, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:                    **FILED APRIL 12, 2016**

Appellants Tioga Investments II, LLC and Yip-Yan Wong (collectively "the Borrowers") appeal from the Order entered on April 17, 2015, by the Honorable Gary S. Glazier in the Court of Common Pleas of Philadelphia County denying their Verified Petition to Mark Judgment Satisfied, Released and Discharged Pursuant to 42 Pa.C.S.A. § 8103(d). Upon our review of the record, we affirm.

The trial court set forth the relevant facts and procedural history herein as follows:

> [ ] [Conestoga Bank, S/B/M/ First Penn Bank] ["the Bank"], loaned funds to [the Borrowers]. The loaned funds were secured by a mortgage against five distinct real properties located in Philadelphia, Pennsylvania. The complaint-in-

*Former Justice specially assigned to the Superior Court.

confession-of-judgment asserts that Borrower[s] defaulted by failing to make payments to the Bank when due.[1]  The Bank confessed judgment against Borrower[s] on March 5, 2013, in the amount of $739,924.81 (the "Judgment Amount").  On April 26, 2013, a writ of execution was issued:  The writ required the Sheriff of Philadelphia County to levy against the afore-mentioned five mortgaged properties.  A sheriff's auction occurred on November 7, 2013, and the Bank acquired the five properties for $300,000.00.  The five properties acquired by the Bank appear to have a combined value inferior to the full Judgment Amount of $739,924.81.

\*\*\*

On August 22, 2014, the Bank received delivery of the deed to the five properties from the Sheriff's Office.  This deed, however, was incomplete because it did not contain the metes and bounds descriptions to some of the properties therein.[3]  Consequently, the Sheriff of Philadelphia prepared and delivered to the Bank a "Corrective Deed" on September 29, 2014.  Subsequently, the Bank filed a petition to fix the fair market value of the property acquired through the Sheriff's auction.[1]  Through this petition, the Bank seeks an Order that would fix the value of the five properties to an amount in satisfaction of the Judgment Amount of $739,932.81.  The petition to fix the fair market value of the five properties was filed more than six months after delivery of the first, incomplete deed, but within six months after delivery of the subsequent, corrective deed.

On March 4, 2015, before the Bank filed its petition to fix the fair market value of the properties, Borrower[s] filed the instant petition to mark the judgment satisfied, released and discharged, notwithstanding the deficiency in the value of the property as acquired by the Bank.  In [their] petition, Borrower[s] argue[] that the Bank failed to file the petition to fix the real estate value of the property within the statutory period of six months, beginning on August 22, 2014- the date of delivery of the first, yet incomplete deed.  According to Borrower[s], the six-month period for filing of the petition began to run upon delivery of the first, incomplete deed, and not upon delivery of the second, corrective deed.  Borrower[s] assert[] that the second, corrective deed "does not extend or limit

---

[1] The Bank filed its Petition to Establish Fair Market Value of Real Estate Pursuant to Pa.R.C.P. No. 3281 on March 17, 2015.

existing record legal title or interest" [;][4] therefore, the Bank lost its opportunity to establish a judgment deficiency by failing to timely file its petition within six months from delivery of the first deed.

___

[1] Complaint, ¶ 13.

[3] Metes and bounds are defined as "[t]he territorial limits of real property as measured by distances and angles from designated landmarks and in relation to the adjoining properties." BLACKS LAW DICTIONARY 1005 (7TH ED. 1999).

[4] Brief in support of petition to mark judgment satisfied, released and discharged pursuant to 42 Pa.C.S.A. § 8103(d), p.6 (citing 72 Pa.C.S.A. § 8103-C.3).

Trial Court Opinion, filed April 17, 2015, at 1-3.

On March 24, 2015, the Bank filed its Answer in opposition to the Borrowers' petition to satisfy, and the Borrowers filed a response to the Bank's petition to establish fair market value on April 6, 2015.

On April 17, 2015, the trial court entered its Order denying the Borrowers' petition to mark judgment satisfied. The Borrowers filed a timely notice of appeal on April 21, 2015. In response, the parties agreed that the Bank's petition to establish fair market value would be withdrawn without prejudice pending the result of the appellate proceedings.[2]

___

[2] Also in that Order, the trial court scheduled a hearing on the Bank's petition to establish fair market value which was to be held on May 11, 2015. An appeal will lie only from a final order unless otherwise permitted by statute or rule. *McCutcheon v. Philadelphia Electric Co.*, 788 A.2d 345 (Pa.Super. 2002). In addition, Pa.R.A.P. 341(b)(1) states: "A final order is any order that disposes of all claims and of all parties." The dispositive issue in the Borrowers' petition is whether or not the Bank timely filed its petition to set fair market value; if it has not done so, an order must be entered directing the Prothonotary to mark the judgment satisfied. Thus,
*(Footnote Continued Next Page)*

The trial court did not direct the Borrowers to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and they did not do so. In its Opinion filed on May 12, 2015, the trial court indicated that for the reasons contained in its Memorandum Opinion of April 17, 2015, its Order entered on that same date should be affirmed. In its April 17, 2015, Memorandum Opinion, the trial court noted Pennsylvania permits the execution and delivery of a corrective deed. Trial Court Opinion, filed April 17, 2015, at 4 (citing Pa.R.C.P. 3135(b)).[3] Reasoning that "a corrective deed is a deed" the trial court, without citation to authority or a detailed analysis, found that the Bank was entitled to file its petition for the establishment of a fair market value of the properties both within six months after delivery of the original deed and within six months after delivery of the corrective deed. *Id*.

The Borrowers now present the following questions for our review:

1. Did the lower [c]ourt commit an error of law when it denied [Borrowers'] Petition to Mark Judgment Satisfied,

_____
(Footnote Continued)

because the appealed order fully resolved all issues in the Borrowers' petition and the Bank withdrew the petition to establish fair market value without prejudice pending the resolution on appeal of the Borrower's petition and the May 11, 2015, hearing was never held, the April 17, 2015, Order is appealable as it constitutes a final order fully disposing of the Borrowers' petition to mark judgment satisfied released and discharged.

[3] This Rule provides that: "[i]f the sheriff has made a defective return of the execution proceeding or has executed a defective deed, including the erroneous description of the real estate, the court upon petition of the purchaser or the purchaser's successors in title may correct the return or deed or order that a new return or deed be executed." Pa.R.C.P. 3135(b).

Released and Discharged based upon its conclusion that the appropriate date from which to calculate the commencement of the six month statute of limitations for the filing of a Petition to Set Fair Market Value could be either the date of delivery of a corrective deed to [the Bank] or the date of delivery of the original deed corrected thereby?

2. Did the lower [c]ourt commit an error of law when it entered the [a]ppealed Order without first hearing oral argument?

Brief of Appellants at 2.

At the outset, we note that when reviewing deficiency judgment proceedings, this Court is limited to determining whether there is sufficient evidence to sustain the holding of the trial court or whether it committed reversible error of law. **Bryn Mawr Trust Co. v. Healy**, 667 A.2d 719, 721 (Pa.Super. 1995).

Herein, the Borrowers assert that the trial court's April 17, 2015, Order denying its petition to mark judgment satisfied should be reversed because the Bank did not file its petition to establish fair market value within six months of the date upon which the Sheriff delivered the deed to the Recorder of Deeds following the real estate Sheriff's sale. Specifically, the Borrowers maintain that the six-month period within which the Bank was required to file its petition commenced upon the delivery of the Sheriff's deeds on August 22, 2014, not upon the delivery of the corrective deeds on September 29, 2014. In doing so, the Borrowers reason that the corrective sheriff's deed conveyed nothing to the Bank, and in accordance with the parties' clear intention, the August 22, 2014, deed actually and effectively

- 5 -

conveyed title to all five of the purchased properties, notwithstanding its omissions of certain legal descriptions. Brief for Appellant at 10-12, 13-14.

The Borrowers' first contention that the judgments should have been marked as satisfied by the trial court because the Bank did not timely file its petition to establish fair market value arises under the Deficiency Judgment Act, 42 Pa.C.S.A. § 8103 which provides in relevant part:

> **(a) General rule.**—Whenever any real property is sold, directly or indirectly, to the judgment creditor in execution proceedings and the price for which such property has been sold is not sufficient to satisfy the amount of the judgment, interest and costs and the judgment creditor seeks to collect the balance due on said judgment, interest and costs, the judgment creditor shall petition the court to fix the fair market value of the real property sold. The petition shall be filed as a supplementary proceeding in the matter in which the judgment was entered. If the judgment was transferred from the county in which it was entered to the county where the execution sale was held, the judgment shall be deemed entered in the county in which the sale took place.
>
> * * *
>
> **(d) Action in absence of petition.**—If the judgment creditor shall fail to present a petition to fix the fair market value of the real property sold within the time after the sale of such real property provided by section 5522 (relating to six months limitation), the debtor, obligor, guarantor or any other person liable directly or indirectly to the judgment creditor for the payment of the debt, or any person interested in any real estate which would, except for the provisions of this section, be bound by the judgment, may file a petition, as a supplementary proceeding in the matter in which the judgment was entered, in the court having jurisdiction, setting forth the fact of the sale, and that no petition has been filed within the time limited by section 5522 to fix the fair market value of the property sold, whereupon the court, after notice as prescribed by general rule, and being satisfied of such facts, shall direct the clerk to mark the judgment satisfied, released and discharged.

42 Pa.C.S.A. § 8103(a), (d).

The Deficiency Judgment Act, as applicable herein, required the Bank to file its petition to fix the fair market value within six months of the date upon which the Sheriff delivered the deed, and it is presumed as a matter of law that a judgment is satisfied if a judgment creditor fails to proceed under the Act within the time mandated by statute. *Bryn Mawr*, *supra* at 722. The six-month deadline derives from 42 Pa.C.S.A. § 5522 which states a six-month statute of limitations is applicable to judicial sales:

> **(b) Commencement of action required.--**The following actions and proceedings must be commenced within six months:
>
> [...]
>
> (2) A petition for the establishment of a deficiency judgment following execution and delivery of the sheriff's deed for the property sold in connection with the execution proceedings referenced in the provisions of section 8103(a) (relating to deficiency judgments).

42 Pa.C.S.A. § 5522(b)(2).

As indicated *supra*, the Bank filed its petition to establish fair market value on March 17, 2015, which was more than six months after the sheriff's deed omitting metes and bounds descriptions for three of the mortgaged properties and lacking BRT[4] numbers initially was delivered on August 22, 2014, but within six months of when the corrective deed which included this missing information was delivered on September 29, 2014. As the Sheriff

---

[4] BRT refers to Board of Revision of Taxes Numbers which are assigned to real estate located in Philadelphia County.

delivered a deed twice herein, this Court must determine from which date the six-month time period began to run. Our research has not revealed, nor has the trial court or the parties identified, any legal authority addressing a similar scenario; thus, we look to the plain language of the relevant statutory provisions, and the principles set forth in the Statutory Construction Act, 1 Pa.C.S.A. §§ 1501–1991, to guide our resolution of this issue.

The object of all statutory interpretation is to ascertain and effectuate the intention of the General Assembly while also construing each statute to give effect to all of its provisions. Notwithstanding, when the words of the statute are clear and free from all ambiguity, we will not disregard the letter of the law under the pretext of pursuing its spirit. *Centolanza v. Lehigh Valley Dairies, Inc.*, 658 A.2d 336, 339 (Pa. 1995).

It is well-established precedent that the date of sale for purposes of the six-month statute of limitations under the Deficiency Judgment Act is the date of delivery of the sheriff's deed. 42 Pa.C.S.A. § 5522(b)(2); *Bryn Mawr*, *supra* 667 A.2d at 772. *See also Marx Realty & Imp. Co. v. Boulevard Center, Inc.*, 156 A.2d 827, 830 (Pa. 1959) (stating that since the Deficiency Judgment Act "requires giving credit on the judgment to the extent of the fair value, no bidder has anything from which to give credit until he gets title, and hence no sale to him can be said to have taken place until a deed is delivered). A plain reading of Section 5522(b)(2) reveals it

does not specifically differentiate between dates of delivery of an incomplete deed and a corrective deed, but rather anticipates the delivery of a single one as is evident in its reference to the "execution and delivery of **the sheriff's deed for the property sold** in connection with the execution proceedings" (emphasis added). Borrowers assert that the date of delivery of the corrective deed is "entirely irrelevant" to a consideration of the six (6) month limitations period of Section Pa.C.S.A. 5522(b)(2), and reasons that the use of the article "the" rather than "a" denotes a single incident such that the trial court erroneously determined the six month time period began to run from the date of either the sheriff's deed or the corrective deed. Brief of Appellants at 12, 15.

Contrary to this rationale, the Legislature specifically contemplated a "deed for the property sold." 42 Pa.C.S.A. § 5522(b)(2). A deed is the principal method by which to convey real estate in Pennsylvania and the term "denotes an instrument in writing, signed, sealed and delivered by the grantor whereby an interest in realty is transferred from the grantor to the grantee." **Mountain Properties v. Tyler Hill Realty**, 767 A.2d 1096, 1099 (Pa.Super. 2001) (citation omitted). It is well-settled that if a legal description found in a deed is not completely technically accurate or by metes and bounds, it must, nevertheless, be clear and sufficiently precise to enable a surveyor to locate and identify the property referenced therein. **Dickson v. Pennsylvania Power and Light Company**, 423 A.2d 711,

712-713 (Pa.Super. 1980). In addition, pursuant to 21 Pa.C.S. § 10.1, entitled "Uniform parcel identifier; conveyances, mortgages, releases, and other instruments," real estate may be conveyed only pursuant to a deed containing a uniform parcel identifier and either a metes and bounds description or a lot number reference to a recorded subdivision plan. 21 Pa.C.S. § 10.1(1),(2). Moreover, it is noteworthy that our Supreme Court has stressed the description of a parcel of property is crucial in a conveyance of land through a tax sale and held that a sale is not valid unless both the assessment and the treasurer's deed contain sufficient descriptions to identify and disclose the property taxed and sold. *Bannard v. New York State Natural Gas Corp.*, 293 A.2d 41, 46 (Pa. 1972).

While two sheriff's deeds were delivered herein, the August 22, 2014, deed delineated a metes and bounds description of Parcels "A" and "B" only and omitted a metes and bounds description and lot number reference for parcels "C," "D," and "E." In contrast, the sheriff's deed delivered on September 29, 2014, contained a complete description of and BRT numbers for all five properties the Bank had acquired in connection with the execution proceedings to enable a surveyor to locate the property that was the subject of the sheriff's sale. Moreover, the latter deed is entitled "Deed of

Correction" and bears a separate Instrument Number than that assigned to the August 22, 2014, sheriff's deed.[5]

> We are cognizant that the purpose of the Deficiency Judgment Act is:
>
> to protect debtors after their property was foreclosed. The act was aimed at shielding the mortgagor-debtor from the mortgagee who would purchase the mortgaged property for less than fair market value, usually for cost, and then reduce the debt only by the purchase price. Prior to the Deficiency Judgment Act, the judgment creditor often recovered the property *and* the full amount of the debt. The Deficiency Judgment Act prevented this by requiring the judgment creditor to reduce the debt by the fair market value of the property.

*Fidelity Fed. Sav. And Loan Ass'n v. Capponi*, 684 A.2d 580, 586 (Pa.Super. 1996) (citations omitted) (emphasis in original). Prior to September 29, 2014, the Bank had not obtained clear title to "the property sold," for the deeds lacked descriptions for three properties and the required BRT numbers, thus necessitating the delivery of the corrective deed. This corrective deed was not merely supplementary of the August 22, 2014, instrument, but was delivered "to add missing portion of legal" as the notation on both the Realty Transfer Tax Statement of Value and the Philadelphia Real Estate Transfer Tax Certification forms indicates.[6] As such,

---

[5] While the August 22, 2014, deed was filed at Instrument No. 52819798, the September 29, 2014, Deed of Correction was filed at Instrument No. 52833256.

[6]

> It can never be supposed that it was the meaning of the parties, that a valuable consideration should be paid for a defective title. "The obvious and plain rule," says Yeates, J., in Steinhauer v.

*(Footnote Continued Next Page)*

the August 22, 2014, sheriff's deed was inoperative since it in no way complied with the aforesaid legal principles that a deed must adequately describe the subject property. Because the August 22, 2014, sheriff's deed did not contain a sufficient description of all five properties which were to have been conveyed to the Bank, it was a legal nullity.

It is also noteworthy that this Court has stated "courts faced with determining the precise date on which the six-month period began have followed the *Marx* rule, only carving out an exception where the executing creditor's delay in obtaining delivery of the deed is inexcusable." *Fidelity Bank, N.A. v. Bourger*, 663 A.2d 213, 215 (Pa.Super. 1995). There is no evidence in the record of the Bank's dilatory conduct in procuring the issuance of a complete deed for the property sold. In fact, the Sheriff prepared both of the deeds at issue, promptly corrected the errors contained therein and delivered the corrective deed five weeks later. The parties may

*(Footnote Continued)* _____

> Witman, 1 S. & R. 446, "is, what was the true meaning of the contracting parties? Was it contemplated mutually, that the purchaser should hold the land under a good right, or that he should run his chance of getting a title, and be exposed to all hazards." The sheriff's writ commands him to levy on the property of the defendant, and he has no right to put up to sale or dispose of a mere pretence or shadow of title. It would be a dangerous doctrine to say that every purchaser is bound by his bid, though it turns out immediately after, that nothing can be conveyed by the sheriff. No person would bid at sheriffs' sales on such terms.

*Friedly v. Scheetz*, 1822 WL 2005, at *3 (Pa. 1822).

- 12 -

henceforth engage in proceedings to determine the fair market value of the real properties and thereby determine the Borrower's remaining liability, if any.

In light of the foregoing, we find that under the circumstances presented herein, the trial court's decision the Bank, as a creditor, was entitled to file a petition to establish fair market value within six months after the Sheriff's delivery of the corrective deed on September 29, 2014, is consistent with the Act. **See** 42 Pa.C.S.A. §§ 8103(a), (d), 5522(b)(2)[7]  It follows that the Bank's petition filed on March 17, 2015, was timely, and, as a result, the trial court did not err in denying the Borrowers' petition to mark judgment satisfied, released and discharged.

The Borrowers also contend the trial court erred in deciding their petition to mark the judgment satisfied, released and discharged without first hearing oral argument. Relying upon Pa.R.C.P. 211 and local rules of civil procedure which they explain fail to establish a prescribed procedure for requesting oral argument, Borrowers contend that the default position is that oral argument is required on all motions.

_____

[7] This Court may affirm an order of the trial court on any basis. **Wilkinsburg v. Sanitation Dep't of Wilkinsburg**, 345 A.2d 641 (Pa. 1975).

It is well-settled in this Commonwealth that parties to a civil action generally have the right to orally argue motions. Pa.R.C.P. 211.[8] While the Borrowers point out the failure of local rules to delineate clearly the procedure for requesting oral argument on a petition or motion, they nowhere specifically indicate in their appellate brief that they actually wished and attempted to make such a request. Also, a review of the Verified Petition to Mark Judgment Satisfied, Released and Discharged Pursuant to 42 Pa.C.S.A. 8103(d) does not reveal such a request.[9] Therefore, we conclude the Borrowers may not predicate error upon the trial court's failure to require oral argument prior to disposing of their petition, as the trial court properly may dispose of a motion without first hearing argument. **See Godlewski v. Pars Mfg. Co.**, 597 A.2d 106, 108 (Pa.Super. 1991)

Order affirmed.

---

[8] Effective January 1, 2016, this rule was amended to read as follows: "Any interested party may request oral argument on a motion. The court may require oral argument, whether or not requested by a party. The court may dispose of any motion without oral argument." Pa.R.C.P. No. 211.

[9] In the "WHEREFORE clause," Borrowers respectfully requested only that the trial court "enter an order directing the Prothonotary to mark the Judgment satisfied, released and discharged." **See** Verified Petition to Mark Judgment Satisfied, Released and Discharged Pursuant to 42 Pa.C.S.A. 8103(d) at ¶ 3.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/12/2016</u>